ORIGINAL
19MAG 5329

Approved: *Thomas John Wright*
         THOMAS JOHN WRIGHT
         Assistant United States Attorney

Before:   THE HONORABLE GABRIEL W. GORENSTEIN
         Chief United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

    - v. -

NATHANIEL TAYLOR,

              Defendant.

- - - - - - - - - - - - - - - - - x

**COMPLAINT**

Violations of
18 U.S.C. §§ 922(g)(1),
924(a)(2) and 2

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

    MICHAEL SANTARE, being duly sworn, deposes and says that he is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and charges as follows:

**COUNT ONE**

(Felon in Possession)

    1.  On or about June 4, 2019, in the Southern District of New York and elsewhere, NATHANIEL TAYLOR, the defendant, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did possess in and affecting commerce, a firearm, to wit, a nine-millimeter Kel-Tec semi-automatic pistol, which has previously been shipped and transported in interstate and foreign commerce, and did so knowingly.

        (Title 18, United States Code, Sections 922(g)(1),
                      924(a)(2) and 2.)

    2.  The bases for my knowledge and for the foregoing charge are, in part, described in the following paragraphs.

    3.  I am a Special Agent with the ATF assigned to the Joint Firearms Task Force. I have been personally involved in the investigation of this matter. This affidavit is based upon

my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses, and other individuals, as well as my examination of reports and other records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported in this Complaint, they are reported in substance and in part, except where otherwise indicated.

  4. Based on my conversations with other law enforcement officers about an arrest in New York County, New York, and my review of reports and other records generated during that arrest and from the investigation following that arrest, including video recordings from multiple cameras worn on the bodies of police officers, I have learned, among other things, the following, in substance and in part:

    a. On or about June 4, 2019 at approximately 4:40 PM, two male police officers assigned to the 23rd Precinct of the New York City Police Department ("PO-1" and "PO-2") were sitting in an unmarked police car parked in the vicinity of 1390 Fifth Avenue, New York County, New York, a building located in King Towers, a public housing development operated by the New York City Housing Authority. At approximately this same time, PO-1 and PO-2 started to watch an individual who was standing in front of 1390 Fifth Avenue. As PO-1 and PO-2 watched this individual, whom they later identified as NATHANIEL TAYLOR, the defendant, they began to suspect, based on his physical appearance and his location, that he might be a subject wanted on attempted-murder charges arising from a shooting that occurred on May 28, 2019 in the rear of 1840 Lexington Avenue, New York County, New York, which is approximately four blocks away. PO-1 and PO-2 were familiar with the appearance of that subject from wanted posters in the 23rd Precinct, which listed the subject's last known address as 1390 Fifth Avenue.

    b. After pulling up in their unmarked police car to the front of 1390 Fifth Avenue, PO-1 and PO-2, who were dressed in plain clothes and equipped with body-worn cameras, got out of that car and walked up to TAYLOR with their body-worn cameras recording. As he approached TAYLOR, PO-1, who was wearing a visible bullet-proof vest and a visible shield, asked TAYLOR, in substance and in part, whether he could ask some questions of TAYLOR. After TAYLOR asked, in substance and in part, if there was a reason that PO-1 wanted to ask the questions, PO-1 stated, in substance and in part, that he would explain. As PO-1 walked with TAYLOR on the sidewalk toward the

building located at 1390 Fifth Avenue, he asked TAYLOR, in substance and in part, whether TAYLOR possessed any weapon, in response to which TAYLOR ran at a dead sprint south along the sidewalk of Fifth Avenue with PO-1 and PO-2 chasing him.

    c. After pursuing TAYLOR for approximately 40 seconds through the interior walkways of King Towers, during which time he never lost sight of TAYLOR, PO-2 followed TAYLOR back to the front of 1390 Fifth Avenue, where TAYLOR saw that PO-2 was only steps behind him and climbed a short set of stairs up to a side door of the building. As he climbed that short set of stairs, TAYLOR removed a fanny pack that he had been wearing across his chest and threw it down to the ground beside the staircase. As he reached the top of the staircase, TAYLOR fell before entering the building. There, PO-2, who was joined seconds later by PO-1, detained TAYLOR.

    d. Having radioed for assistance, PO-1 and PO-2 were joined within approximately one minute by other police officers with the NYPD, including a police officer ("PO-3") who located the fanny pack beside the staircase where TAYLOR has thrown it to the ground before falling as he attempted to enter the building. PO-3 felt the hard outline of an object shaped like a firearm in the fanny pack, and he found a nine-millimeter Kel-Tec semi-automatic pistol loaded with six rounds of ammunition (the "Firearm") in the fanny pack.

    e. Thereafter, on or about June 4, 2019, PO-2 together with another police officer with the NYPD, who was assigned to the detective squad of the 23rd Precinct, conducted a videotaped interview with TAYLOR inside a particular address in New York County, New York. During that videotaped interview, TAYLOR stated, in substance and in part, that he possessed the Firearm for protection.

  5. As part of my investigation of this matter, I have reviewed a report on the Firearm that a special agent of the ATF prepared based on the special agent's expertise in the manufacturing of firearms and analysis of documents relating to the Firearm, including photographs of the Firearm. In the report, based on this expertise and analysis, the special agent concludes that the Firearm was not manufactured in the State of New York.

  6. Finally, as part of my investigation of this matter, I have reviewed the criminal history of NATHANIEL TAYLOR, the defendant, and identified that TAYLOR was convicted in the Supreme Court of the State of New York, New York County on or about November 4, 2016 of Gang Assault in the Second Degree, in

violation of New York Penal Law Section 120.06 ("[a] person is guilty of gang assault in the second degree when, with intent to cause physical injury to another person and when aided by two or more other persons actually present, he causes serious physical injury to such person or to a third person"). Based on my training and experience, I am aware that this offense is a crime punishable by a term of imprisonment exceeding one year. Based on my review of the criminal history of TAYLOR, I am further aware that TAYLOR was in fact sentenced on or about November 4, 2016 to a state prison term of four years.

    WHEREFORE, deponent respectfully requests that NATHANIEL TAYLOR, the defendant, be imprisoned or bailed, as the case may be.

_____
MICHAEL SANTARE
Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Sworn to before me this
5th day of June, 2019

_____
THE HONORABLE GABRIEL W. GORENSTEIN
Chief United States Magistrate Judge
Southern District of New York